# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SHERRI JOHNSON**                                      **CIVIL ACTION**

**VERSUS**

                                                        **NO. 20-103-SDD-SDJ**

**COURTESY AUTOMOTIVE GROUP, et al.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 8, 2021.

_____
   **SCOTT D. JOHNSON**
   **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SHERRI JOHNSON                                    CIVIL ACTION

VERSUS

                                                  NO. 20-103-SDD-SDJ

COURTESY AUTOMOTIVE GROUP, et al.

---

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Before the Court is a Motion to Dismiss Pursuant to F.R.C.P. 12(b)(5) and (6) or, Alternatively, for More Definite Statement Under Rule 12(e) filed by Defendant Courtesy of Acadiana, LLC d/b/a Chrysler Dodge Jeep Ram Fiat ("Courtesy") (R. Doc. 7). Plaintiff Sherri Johnson opposes Courtesy's Motion (R. Doc. 10).

I.      Background

On or about February 24, 2020, *pro se* Plaintiff Sherri Johnson ("Plaintiff" or "Ms. Johnson") initiated this litigation, filing suit against "Courtesy Automotive Group, also d/b/a Chrysler Dodge Ram Fiat" ("Courtesy") as well as Todd Hebert, Finance Director at Courtesy ("Hebert") (collectively, "Defendants").[1] Plaintiff's Complaint brings causes of action for alleged violations of the Federal Trade Commission Act ("FTC Act"), the Truth in Lending Act ("TILA"), and the Consumer Leasing Act ("CLA").

---

[1] R. Doc. 1 at 8-9 ¶¶ 6-9. The Court notes that while Courtesy and Todd Hebert are the only Defendants listed in the case caption and the only Defendants that have been served, in her Complaint, Plaintiff also lists Ryan Arceneaux, Finance Manager at Courtesy, and Crystal Green, Salesperson at Courtesy, as Defendants. *See* R. Doc. 1 at 8-9 ¶¶ 7-8; R. Doc. 7-1 at 11 n. 36.

This case arises from the purchase of a 2013 Chevrolet Camaro ("Camaro") by Plaintiff from Courtesy on May 30, 2018.[2]  On that day, Plaintiff entered into a sales agreement for the Camaro, at the same time paying a $1,000 down payment and applying for financing of the vehicle through Crescent Financing.[3]  While her application was pending, Plaintiff was allowed to take possession of the Camaro.[4]  However, Plaintiff's credit application subsequently was denied, allegedly because Plaintiff "had misrepresented information regarding her employment status."[5]  According to Courtesy, Plaintiff was contacted multiple times via telephone and registered letter and was asked to return to Courtesy and reapply for financing with another vendor.[6]  Plaintiff, however, did not ever reapply for or otherwise obtain financing, but retained possession of the Camaro.[7]  Per Plaintiff, this effort by Courtesy to recover the vehicle occurred "almost 4 months after the sale."[8]

Following multiple alleged failed efforts by Plaintiff to obtain a copy of the written contract concerning the Camaro, Plaintiff filed a complaint against Courtesy with the Louisiana "DMV Commissioner."[9]  On September 19, 2018, Kevin Broussard, an investigator with the Louisiana Motor Vehicle Commission sent Plaintiff a letter stating that, following his investigation of Plaintiff's allegations, he "only [found] indication that Courtesy Chrysler Dodge Jeep RAM FIAT violated LA R.S. 32:1261.A(2)(f)[10] by not maintaining the terms of the spot-delivery in writing"

---

[2] R. Doc. 7-1 at 1.  The Court notes that given the paucity of facts relevant to this case in Plaintiff's Complaint, much of the information included in this Background section has been taken from Defendants' Motion to Dismiss.

[3] Id.; R. Doc. 1 at 1.

[4] R. Doc. 7-1 at 1.

[5] Id.

[6] Id. at 1-2.

[7] Id. at 2.

[8] R. Doc. 1 at 1.

[9] Id.

[10] According to La. R.S. 32:1261.A(2)(f), it is unlawful "[t]o deliver to a prospective purchaser a new or a used vehicle on a sale conditioned on financing, i.e., a spot delivery, except on the following terms and conditions which shall be in writing and shall be a part of the conditional sales contract or other written notification signed by the purchaser…" (terms and conditions omitted).

and that "[a]ppropriate action" would be taken by the Commission.[11]  According to Courtesy, Mr. Broussard contacted Hebert regarding Plaintiff's complaint, during which conversation he informed Hebert that if Plaintiff did not return the Camaro to Courtesy within 48 hours, as he allegedly had instructed Plaintiff to do, Courtesy had the right to seize the Camaro on its own.[12]

When Plaintiff again failed to attempt to either obtain financing for the Camaro or return the vehicle to Courtesy, on April 1, 2019, Courtesy filed suit against Plaintiff in the 16th Judicial District Court for the Parish of St. Martin, State of Louisiana, including a Writ of Attachment to seize the Camaro.[13]  The following day, on April 2, 2019, an order for seizure of the Camaro was issued by the state court.[14]  Hebert then, on August 9, 2018, filed a complaint against Plaintiff with the Breaux Bridge Police Department, which resulted in a police officer attempting to contact Plaintiff by phone and at the address she provided Courtesy.[15]  According to the report of the police officer who handled the complaint, after confirming the validity of the check stub provided by Plaintiff as evidence of her employment in her initial financing application, the police officer determined that charges against Plaintiff would not be filed at that time.[16]  The Camaro subsequently was seized by the St. Landry Parish Sheriff's Office on August 13, 2019.[17]

On August 16, 2019, Plaintiff, filed for Chapter 13 bankruptcy.[18]  In that proceeding, Plaintiff allegedly filed a Motion for Turnover and Sanctions against Courtesy, seeking return of the Camaro to her and a determination that the vehicle was her property.[19]  This motion

---

[11] R. Doc. 1-2 at 1.
[12] R. Doc. 7-1 at 2.
[13] *Id.*
[14] *Id.*
[15] R. Doc. 1-2 at 2-3.  The Court notes Plaintiff's position that the police report filed by Hebert was "false" and resulted in the police "under false pretenses bombard[ing] the Plaintiff's sister's home with Officers demanding the alleged stolen vehicle."  R. Doc. 1 at 1.
[16] R. Doc. 1-2 at 3.
[17] R. Doc. 7-1 at 2.
[18] *Id.* at 3.
[19] *Id.*

subsequently was denied, which ruling was never appealed by Plaintiff.[20]  Plaintiff's bankruptcy proceeding was dismissed on October 25, 2019.[21]

Plaintiff then filed the instant lawsuit, seeking, *inter alia*, injunctive relief and damages, as well as return of the Camaro to her.[22]  In response to Plaintiff filing this lawsuit, Defendants, on June 26, 2020, filed the instant Motion to Dismiss pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's suit should be dismissed based on insufficiency of service of process as well as Plaintiff's failure to state a viable claim against Defendants.[23]  Plaintiff filed her opposition to Defendants' Motion to Dismiss on August 6, 2020, requesting the Court deny Defendants' Motion.[24]

## II.    Law and Analysis

In their Motion, Defendants seek dismissal first under Rule 12(b)(5) and second under Rule 12(b)(6).  Here, however, the Court will first address Defendants' Rule 12(b)(6) Motion to Dismiss, followed by their request for dismissal pursuant to Rule 12(b)(5).

### A.    Rule 12(b)(6) Motion to Dismiss

#### 1.    Legal Standards

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In order to survive a Rule 12(b)(6) motion, a pleading's language must, on its face, demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

---

[20] *Id.*
[21] *Id.*
[22] R. Doc. 1 at 32.
[23] R. Doc. 7-1 at 4.
[24] The Court notes that Plaintiff's Opposition was filed 16 days after the deadline for filing same had passed.  However, given the dispositive nature of Defendants' Motions and Plaintiff's *pro se* status, the Court will here consider the arguments therein.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557.  Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 570).

With regard to *pro se* pleadings, they are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see also SEC v. AMX, Int'l, Inc*., 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs generally given one chance to amend before dismissal "unless it is clear that the defects are incurable").

### 2.    Dismissal of Plaintiff's Claims

At the outset, the Court notes that Plaintiff's Complaint appears to be a form complaint largely taken from another proceeding regarding yo-yo sales practices by car dealerships.  For

example, defendants not named or in any way associated with this litigation are referenced,[25] as are paragraphs in the Complaint that do not exist.[26]  In addition, very few facts about the actual events giving rise to this case are included in the Complaint; rather, the majority of the Complaint focuses on yo-yo sales by car dealerships on a general level, and most, if not all, of the cases cited in the Complaint are from other districts and circuits and are not binding on this Court.[27]  Thus, much of Plaintiff's Complaint is not relevant to the allegations Plaintiff herself has asserted against the specific Defendants named herein.

### a.    Federal Trade Commission Act

In her Complaint, the first counts Plaintiff asserts against Defendants are for violations of the FTC Act.[28]  Specifically, Plaintiff alleges the Defendants made misrepresentations regarding lease, credit, or purchase terms, that they engaged in deceptive and unfair yo-yo practices, and that they have supported deceptive consumer reviews.[29]

According to the FTC Act, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."  15 U.S.C. § 45(a)(1).  However, the FTC Act then specifies that "[t]he [Federal Trade] Commission is hereby empowered and directed to prevent persons, partnerships, or corporations…from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(2).  Thus, the power to act under the FTC Act is granted solely to the Federal Trade Commission ("FTC") itself; the statute does not give this right to private citizens, such as the Plaintiff here.  *See Norris v. Fairbanks Capital Corp.*, 178 F.App'x

---

[25] *See, e.g.*, R. Doc. 1 at 12 ¶ 19 (referencing "Defendant Covina Chevrolet") and 21 at ¶ 37 (referencing "Defendants Joseph Schrage or Michael Schrage").
[26] *See, e.g.*, R. Doc. 1 at 23 ¶ 44 (referencing "Paragraph 82 of this Complaint" when Complaint consists only of 63 paragraphs) and 25 ¶ 47 (referencing "Paragraph 94 of this Complaint").
[27] As only one example, see cases cited on R. Doc. 1 at 5.
[28] R. Doc. 1 at 22.
[29] *Id.* at 22-27 ¶¶ 43-53.

401, 403 (5th Cir. 2006) (property owner, asserting claims arising from sale of property, had no private right of action under the FTC Act); *Cranfill v. Scott & Fetzer Co.*, 752 F.Supp. 732, 734 (E.D. Tex. 1990) (finding it "well settled law" that no implied private right of action under the Federal Trade Commission Act exists); *U.S. v. Philip Morris Inc.*, 263 F.Supp.2d 72, 78 (D.D.C. 2003) ("The FTC Act is enforced exclusively by the FTC; there is no private right of action under the statute.").

Plaintiff here attempts to plead around this insurmountable hurdle by claiming, in her Complaint, that she is "being assisted by an independent agency of the United State Government created by statute to bring this action under sections 15 U.S.C. §§ 41-58" and that "[t]he FTC enforces 5(a) of the FTC Act, 15 U.S.C. § 45(a)."[30] However, the FTC is not a party to this action, and there is absolutely no evidence indicating that the FTC is involved in this action, or its underlying facts, in any way. While this Court recognizes that, in considering a Rule 12(b)(6) motion to dismiss, a Court must view "all well-pleaded facts...in the light most favorable to the plaintiff," this Court also has held that it "does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Smith v. Cassidy*, No. 14-647, 2015 WL 803145, at *2 (M.D. La. Feb. 25, 2015) (quoting *City of Clinton, v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010); *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Also unacceptable are "naked assertions devoid of further factual enhancement." *Id.* (quoting *Wilson v. Kirby Corp.*, No. 12-800, 2012 WL 1565415, at *1 (E.D. La. May 1, 2012)). Thus, as Plaintiff is a private citizen acting alone in this litigation who cannot bring a cause of action under the FTC Act, the Court finds that all allegations against Defendants of violations of the FTC Act should be dismissed with prejudice. *See Damond v. Reedy*, No. 18-647, 2018 WL 4868979, at *4

---

[30] R. Doc. 1 at 7 ¶ 4.

(M.D. La. Sept. 24, 2018) (recommending dismissal of *pro se* plaintiff's claims under the FTC Act with prejudice because the FTC Act "does not provide for private causes of action"), *report and recommendation adopted*, 2018 WL 6579162 (M.D. La. Dec. 13, 2018); *Jackson v. Standard Mortgage Corp.*, No. 18-927, 2019 WL 6769361, at \*5 (W.D. La. Dec. 11, 2019) (dismissing with prejudice *pro se* plaintiff's claims under the FTC Act because it fails as a matter of law, stating that "in keeping with relevant Fifth Circuit jurisprudence, [plaintiff] cannot pursue a claim…under this statute" because the FTC Act "does not permit private causes of action"); *Marshall v. Bank of America*, No. 13-113, 2014 WL 12561626, at \*5 (E.D. Tex. Feb. 14, 2014) (dismissing *pro se* plaintiff's claims under the FTC Act as a matter of law because "[t]here is no implied private right of action under the Federal Trade Commission Act").

### b.    Truth in Lending Act

Next, Plaintiff asserts that Defendants violated TILA as well as Regulation Z because their "advertisements promoting closed-end credit…have included TILA triggering terms, but have failed to disclose, and/or failed to disclose clearly and conspicuously, TILA additional terms required by the TILA and Regulation Z."[31]  Thus, per Plaintiff, Defendants have violated Section 144 of TILA, 15 U.S.C. § 1664, and Section 226.24(d) of Regulation Z, 12 C.F.R. § 226.24(d).[32]

"Congress enacted TILA to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  *McLean v. Big Dog Group, LLC*, No. 15-40, 2016 WL 3211514, at \*4 (M.D. La. Mar. 11, 2016) (quoting 15 U.S.C. § 1601) (internal quotations omitted).  "[A]ny action under this section may be brought in any United States district court…within one year from the

---

[31] R. Doc. 1 at 28 ¶ 56.
[32] *Id.* ¶ 57.

date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also McLean*, 2016 WL 3211514, at *6 ("An action under TILA for a closed-credit transaction must be brought within one year from the date of the occurrence of the violation."). This Court previously found that "[t]he Fifth Circuit has interpreted 'occurrence of the violation' to mean consummation; a TILA violation occurs when the transaction is consummated." *McLean*, 2016 WL 3211514, at *6 (citing *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986); *Bourgeois v. Haynes Const. Co.*, 728 F.2d 719, 720 (5th Cir. 1984)). "Consummation is the time at which a contractual relationship is created between the parties, and state law governs this determination." *Id.* (citing 12 C.F.R. § 1026, Supp. I, Part 1; *Clark v. Troy & Nichols, Inc.*, 864 F.2d 1261 (5th Cir. 1989)).

However, in certain circumstances, the doctrine of equitable tolling may "suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *Dixon v. Gen. Motors Fin. Corp*., No. 17-4492, 2018 WL 746379, at *4 (E.D. La. Feb. 6, 2018). "Equitable tolling is appropriate where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Deaville v. Capital One Bank*, 425 F.Supp.2d 744, 752 (W.D. La. 2006) (citations and internal quotations omitted).

In her Complaint, Plaintiff states that the Camaro "was sold to [her] after a down payment of $1000.00" and references a "written contract."[33] While Plaintiff does not provide the date of the transaction, the Incident Report filed by the Breaux Bridge Police Department, attached to Plaintiff's Complaint, states that Ryan Arceneaux at Courtesy told the police officer that "on May 29th 2018 Sherri Johnson entered the dealership and left with a 2013 Chevrolet Camaro."[34] And the sale of the Camaro by Courtesy to Plaintiff is the only transaction referenced between the two

---

[33] R. Doc. 1 at 1.
[34] R. Doc. 1-2 at 3.

Parties. Because consummation occurs at the time the contractual relationship is created, then, if a contractual relationship was successfully entered into by Courtesy and Plaintiff, it occurred on May 29, 2018, more than one year before this litigation was filed on February 24, 2020, and is untimely.[35] It, therefore, appears to be prescribed on its face.

However, the Court's analysis does not end there. While Plaintiff herself does not raise this issue, the possibility may exist that equitable tolling of Plaintiff's prescriptive period under TILA applies here. In the *Dixon* case, in which the plaintiff brought his claim under TILA more than two years after the transaction there at issue, the court found that equitable tolling did not apply because nothing prevented the plaintiff from comparing the lease documents that were the subject of his complaint with TILA's statutory and regulatory requirements. *Dixon*, 2018 WL 746379, at *4. Similarly, in *Jackson v. Adcock*, a case cited by the *Dixon* court, the court there found the *pro se* plaintiff's claims were barred by the TILA statute of limitations and that equitable tolling did not apply again because nothing prevented the plaintiff from comparing the loan documents, which she read and signed, with TILA's statutory and regulatory requirements. *Jackson v. Adcock*, No. 03-3369, 2004 WL 1900484, at *4 (E.D. La. Aug. 23, 2004).

Here, in contrast, Plaintiff claims in her Complaint, that she made "repeated attempts…via phone calls, text, emails, and written communication to no avail to obtain the written contract that

---

[35] The Court notes that, in her opposition to Defendants' Motion to Dismiss, Plaintiff states: "Ryan Arceneaux & Todd Hebert ignored calls, emails, faxes, and certified letters regarding the 2013 Chevy Camaro final contract agreement that was already in effect starting October, 2018 although the purchase took place 05/31/2019." R. Doc. 10 at 3 ¶ 12. However, nowhere else in her Complaint or opposition does Plaintiff assert the purchase took place on May 31, 2019. Rather, all evidence provided indicates the sale occurred in 2018. For example, the Certificate of Title for the Camaro listing Plaintiff as the owner shows the date acquired as May 29, 2018 (R. Doc. 1-2 at 5), and the Registration Certificate for the Camaro showing Plaintiff as the owner was issued on August 24, 2018 (R. Doc. 1-2 at 6). In addition, Plaintiff made her complaint to the Louisiana Motor Vehicle Commission prior to September 19, 2018, the date Investigator Broussard issued Plaintiff a letter stating his findings (R. Doc. 1-2 at 1). As such, the Court interprets Plaintiff's reference to the "05/31/2019" purchase date as a typographical error.

finance Manager Ryan Arceneaux refused to give to the Plaintiff."[36]  She further claims in her

Opposition:

> Financer Ryan Arceneaux told the Plaintiff to sign blank contract documents and that he would mail the entire final contract to the Plaintiff the day of the final deal. The Plaintiff called, emailed, and went in person to the Courtesy Dealership requesting the final contract and never received the contract until a year and a half later when the Plaintiff's Bankruptcy Attorney Sandoz was finally able to receive a ***forged/doctored copy*** of the contract after three previous failed requests.[37]

Based on these allegations, it is unclear to the Court if Plaintiff was provided complete copies of

the sales and financing documents, or was even able to view complete versions of those documents,

at the time of the transaction or thereafter, such that comparison with the provisions of TILA would

have been possible.  It also is unclear whether Plaintiff was "actively misled" by Defendants.  The

Fifth Circuit has instructed that a Rule 12(b)(6) motion to dismiss based on prescription should not

be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief."  *Abdul-Alim Amin v. Universal Life Ins. Co. of*

*Memphis, Tenn.*, 706 F.2d 638, 640 (5th Cir. 1983).  As such, given the possible application of the

doctrine of equitable tolling here, the Court will not recommend dismissal on the grounds of

prescription.

However, Plaintiff has wholly failed to adequately allege a cause of action under TILA.  In

her Complaint, she claims that "Defendants' advertisements promoting closed-end credit…have

included TILA triggering terms, but have failed to disclose, and/or failed to disclose clearly and

conspicuously" certain terms required by TILA and Regulation Z, including the amount or

percentage of the down payment, the terms of repayment, and the annual percentage rate.[38]  She

also makes some very general allegations that Defendants have advertised in various languages

---

[36] R. Doc. 1 at 1.
[37] R. Doc. 10 at 2-3 ¶ 8 (emphasis in original).
[38] R. Doc. 1 at 28 ¶ 56.

about "key terms, such as low sales prices, low monthly payment amounts, and low down payment amounts."[39]   Per Plaintiff, Defendants have "misrepresented these claims and have hidden additional material terms that have significantly qualified or contradicted the prominently advertised terms," often presenting these terms in English, even when the advertisement is in another language.[40]   Plaintiff also claims Defendants have added additional charges into the financed amount without the purchaser's consent, have refused to honor contracts, have received numerous negative online reviews, and have not included required information, such as the total amount due or the timing of monthly payments, prior to consummation of the purchase.[41]

However, Plaintiff fails to identify a single specific "advertisement" of the actual Defendants in this case.  In fact, the only specific example provided involves "Defendant Covina Chevrolet,"[42] which is not a named Defendant in this action and, to the Court's knowledge, is in no way connected with this litigation, indicating, again, that Plaintiff has used a complaint from another lawsuit that contains numerous potentially irrelevant allegations.  Plaintiff also in no way connects any such advertisements by Defendants to her purchase of the Camaro, the transaction here at issue.  Thus, Plaintiff has not identified a particular act by Defendants here and specified how that act violates the provisions of TILA.  As such, the Court finds that Plaintiff has failed to allege facts that state a claim under TILA.

The Court here again recognizes that *pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993)

---

[39] *Id.* at 10 ¶ 13.
[40] *Id.* at 11 ¶ 13.
[41] *Id.* at 11-12 ¶¶ 15-18.
[42] *Id.* at 12 ¶ 19.  Plaintiff states: "Defendant Covina Chevrolet also has referred the consumer to 'See Details.'  The 'See Details' link on either the website or the Facebook post has not disclosed any additional material terms of the offer."

(recognizing the established rule that this court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). Further, a court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). Nevertheless, "a *pro se* litigant is not exempt . . . from compliance with relevant rules of procedural and substantive law." *NCO Fin. Systems, Inc. v. Harper–Horsley*, No. 07–4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). As such, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson,* 999 F.2d at 100 (citing *Levitt v. Univ. of Texas El Paso*, 847 F.2d 221, 224 (5th Cir. 1988)). Given Plaintiff's *pro se* status, the Court recommends that this claim be dismissed without prejudice and that Plaintiff be granted leave to amend her Complaint to correct the deficiencies regarding this particular claim, *i.e.*, the failure to adhere to TILA's statutory prescriptive period and the failure to plead facts setting forth a claim against Defendants in this case under TILA, should she so choose.

### c.    Consumer Leasing Act

Additionally, Plaintiff, in her Complaint, alleges that Defendants violated the Consumer Leasing Act, 15 U.S.C. §§ 1667-1667f, as well as Regulation M, by failing "to disclose or to disclose clearly and conspicuously required lease information."[43] Specifically, Plaintiff claims that "Defendants' advertisements promoting consumer leases" fail to adequately disclose certain terms required by the CLA and Regulation M, thereby violating 15 U.S.C. § 1667c and 12 C.F.R. § 213.7.[44] By its name, the CLA applies to consumer leases, which the CLA defines, in part, as "[a] contract in the form of a lease or bailment for the use of personal property by a natural person for a period of time exceeding four months." 15 U.S.C. § 1667(1). *See also Dixon v. Toyota*

---

[43] R. Doc. 1 at 29.
[44] *Id.* at 29-30 ¶¶ 60-61.

*Motor Credit Corp.*, 794 F.3d 507, 509 (5th Cir. 2015) ("[t]he CLA, as its name suggests, regulates consumer leases") (emphasis omitted); *Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 436 (5th Cir. 2000) ("[t]he CLA was intended 'to assure a meaningful disclosure of the terms of leases of personal property…'") (quoting 15 U.S.C. § 1601(b)).

Because the CLA applies only to consumer leases, it is not applicable here.  Plaintiff, in her Complaint, states that the Camaro "was sold to [her] after a down payment of $1000.00."[45] Nowhere does Plaintiff allege that she leased the Camaro or otherwise entered into a lease agreement with Courtesy.  Additionally, once again, no advertisements by Courtesy allegedly in violation of the CLA have been identified. Even if they were, this would not affect Plaintiff's action herein, which involves only her purchase—not lease—of the Camaro from Courtesy.  As such, Plaintiff fails to state a claim under the CLA.  Further, any amendment by Plaintiff would be futile; no amendment, given the facts of this case, could cure these deficiencies.  This claim, therefore, should be dismissed with prejudice. *See Dixon*, 794 F.3d at 509-10 (affirming district court's dismissal of plaintiff's complaint for failure to state a claim under CLA because the lease there at issue was not a consumer lease and, as such, was not regulated by the CLA); *Symonette v. V.A. Leasing Corp.*, 648 F.App'x 787, 790-91 (11th Cir. 2016) (affirming district court's dismissal of plaintiff's claims under the CLA because the CLA "applies only to a consumer lease" and did not cover plaintiff's lease of a vehicle for business purposes).

### d.    Res Judicata

In their Motion to Dismiss, Defendants also argue that Plaintiff's claims against them should be dismissed based on the doctrine of *res judicata*.  According to Defendants, in Plaintiff's bankruptcy proceeding, the U.S. Bankruptcy Court for the Western District of Louisiana issued an

---

[45] R Doc. 1 at 1.

order denying Plaintiff's Motion to Turnover the Car, which sought return of the Camaro.[46]  This order was not appealed, and Plaintiff's bankruptcy case ultimately was dismissed.[47]  Per Defendants, "the bankruptcy proceeding and this action are based on the same nucleus of operative facts" and, "[t]o reach its decision, the Bankruptcy Court necessarily determined that Johnson did not own the Car."[48]  Specifically, Defendants state that "[b]y Order dated October 29, 2019, the Bankruptcy Court denied the Motion for Turnover, finding in oral reasons that Johnson did not own the Car, and ordered it returned to Courtesy."[49]

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Houston Professional Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).  Here, Defendants' entire *res judicata* argument is based on the October 29, 2019 order of the bankruptcy court.  The Court here acknowledges that the Bankruptcy Court for the Western District of Louisiana did, in fact, deny a Motion for Turnover and Sanctions filed by the Plaintiff herein in that bankruptcy proceeding.  That Motion for Turnover and Sanctions sought to have the Camaro, which had been seized by Courtesy two days prior to Ms. Johnson filing for bankruptcy, turned over to Ms. Johnson in light of the automatic stay resulting from the instigation of bankruptcy proceedings.[50]  However, the order issued by that court simply states that a hearing was held "on the Debtor's Motion for Turnover and Sanctions" and denies the motion "for reasons orally assigned."[51]  No other information is provided in that order, and no other information, such as a transcript of the hearing

---

[46] R. Doc. 7-1 at 6, 8.
[47] *Id.* at 6
[48] *Id.* at 8.
[49] R. Doc. 7 at 5 ¶ 12.
[50] U.S. Bankruptcy Court, Western District of Louisiana, case no. 19-50971, R. Doc. 4 at 1-2 ¶¶ 5-8.
[51] U.S. Bankruptcy Court, Western District of Louisiana, case no. 19-50971, R. Doc. 29.

before the bankruptcy court, has been provided by Defendants. Not knowing the oral reasons provided, the Court cannot surmise, based only on that order, that the bankruptcy court found that Plaintiff did not own the Camaro and ordered it returned to Courtesy, as argued by Defendants. Thus, because the Court does not know the full holding or parameters of the bankruptcy court's order, it cannot find *res judicata* prohibits Plaintiff's claims here.

**B.      Rule 12(b)(5) Motion to Dismiss**

In addition to their Motion to Dismiss under Rule 12(b)(6) for failure to state a claim, Defendants also seek dismissal pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure based on insufficiency of service of process.[52] Defendants argue that neither Courtesy nor Hebert was properly served pursuant to the requirements set forth in Federal Rule of Civil Procedure 4. The Court examines the service of each Defendant, in turn, below.

**1.      Applicable Law**

Under Rule 4, a plaintiff is responsible for serving the defendant with a copy of the complaint and a summons. Fed. R. Civ. P. 4(c)(1). The Rule further provides that a court must either dismiss the action against a defendant without prejudice, or order that service be made within a specified time, if the defendant is not served within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m).

"A defendant has no obligation to appear in court or defend an action *before* it is formally served with process directing it to appear before that forum." *Thompson v. Deutsche Bank Nat'l Trust Co.,* 775 F.3d 298, 303 (5th Cir. 2014) (emphasis in original). Proper service is critical because "[i]t is axiomatic that in order for there to be in personam jurisdiction there must be valid service of process." *Attwell v. LaSalle Nat'l Bank,* 607 F.2d 1157, 1159 (5th Cir. 1979). Indeed,

---

[52] R. Doc. 7 at 1.

"[a] court which lacks personal jurisdiction over a defendant cannot enter a valid judgment against that defendant." *Trust Co. of La. v. N.N.P. Inc.,* 104 F.3d 1478, 1486 (5th Cir. 1997) (quoting *Broadcast Music, Inc. v. M.T.S. Enters.,* 811 F.2d 278, 281 (5th Cir. 1987)).  If a plaintiff fails to properly effectuate service, the defendant may seek to dismiss the plaintiff's complaint under Rule 12(b)(5).  *See* Fed. R. Civ. P. 12(b)(5) (authorizing a court to dismiss a civil action when service of process is inadequate).

"A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process." *Holly v. Metro. Transit Auth.,* 213 F.App'x 343, 344 (5th Cir. 2007) (unpublished, but persuasive).  The burden of demonstrating the validity of service when an objection is made lies with the party making service. *Id.*  (citing *Carimi v. Royal Carribean Cruise Line, Inc.,* 959 F.2d 1344, 1346 (5th Cir. 1992)).

### 2.    Service of Process on Defendant Todd Hebert

Defendants first argue that service upon Defendant Hebert was insufficient.  According to Defendants, Hebert was served "at Courtesy's dealership located at 4750 Johnson Street in Lafayette, Louisiana,"[53] with the summons and citation having been delivered "to an employee" at that location of Courtesy, not to Hebert personally.[54]  Per Defendants, because Hebert was not served personally or at his residence, service as to him was deficient under Rule 4(e).

Rule 4(e), which governs service of process on an individual, provides in pertinent part:

> **(e) Serving an Individual Within a Judicial District of the United States.**
> Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
>
> > **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

---

[53] R. Doc. 7 at 2 ¶ 2.
[54] R. Doc. 7-1 at 5.

**(2)** doing any of the following:

> **(A)** delivering a copy of the summons and of the complaint to the individual personally;

> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

However, following Defendants' filing of the instant Motion to Dismiss on June 26, 2020, Plaintiff filed into the record an Affidavit of Service (R. Doc. 9) signed by Scott Frank of Lafayette Process Servers LLC and dated July 6, 2020, stating that "Personal/Individual" service on Todd Hebert made on July 1, 2020, was successful.[55]  It further states that the Summons and Complaint were received by Todd Hebert and provides a physical description of Hebert.  As this was filed subsequent to Defendants' Motion to Dismiss and because Defendants have in no way challenged the validity of this Affidavit, the Court considers this evidence of personal service on Defendant Hebert pursuant to Rule 4(e)(2)(A) and finds the service requirements for this Defendant have been met.

### 3.    Service of Process on Defendant Courtesy Automotive Group

With regard to Defendant Courtesy, Defendants claim that Plaintiff attempted to serve Courtesy at the same "4750 Johnston Street, Lafayette, Louisiana" address, in violation of Rule 4(h).[56]  Per Defendants, Courtesy's agent for service of process is located in Broussard,

---

[55] R. Doc. 9 at 2.
[56] R. Doc. 7 at 2 ¶¶ 5-6.

Louisiana.[57] Thus, Plaintiff's failure to serve Courtesy's agent for service of process means service on Courtesy was deficient.[58]

Rule 4(h), which governs service on a domestic corporation, provides in pertinent part:

> **(h) Serving a Corporation, Partnership, or Association.** Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> > **(1)** in a judicial district of the United States:
> >
> > > **(A)** in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> > >
> > > **(B)** by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant…

Again, subsequent to Defendants' filing of their Motion to Dismiss, Plaintiff filed an Affidavit of Service, also signed by Scott Frank of Lafayette Process Servers LLC and dated July 6, 2020, stating that service on Courtesy was made on July 1, 2020, on Curt Williams, "Manager." The manner of service is listed as "Substitute Service – Business."  No further information about Curt Williams is provided.

As stated above, Plaintiff here has the burden to demonstrate valid service in the face of an objection. *Johnny L. Duncan v. City of Hammond*, No. 08-5043, 2009 WL 10680059, at *1 (E.D. La. Mar. 31, 2009) (citing *Carimi*, 959 F.2d at 1346).  Under Rule 4(h)(1)(A), service may be made in compliance with state law where either the district court is located or where service is made, which, in both cases here, is Louisiana.  *Id.* (citing Fed. R. Civ. P. 4(h)(1)).  "In Louisiana, personal service on the corporation's designated agent for service of process is required."  *Id.* at

---

[57] *Id.* at 3 ¶ 7.
[58] *Id.* ¶ 8.

*1 (citing La. Code Civ. Proc. art. 1261(A)). Alternatively, Rule 4(h)(1)(B) allows service on the corporation "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process for the corporation."[59] *Id.* In their Motion to Dismiss, Defendants state that Courtesy's designated agent for service of process was located in Broussard, Louisiana.[60] While Defendants do not provide the name of their registered agent, given that service on Curt Williams was made in Lafayette, it can be surmised that Mr. Williams is not the registered agent for Courtesy. Further, it nowhere is suggested that Mr. Williams is an officer within Courtesy's business structure. The question, then, is whether Mr. Williams, as "manager" of Courtesy, qualifies as a "managing or general agent" under Rule 4. If not, service was improper.

"The Fifth Circuit has not provided much guidance on who is a managing or general agent of a corporation." *Duncan*, 2009 WL 10680059, at *1. In *Jim Fox Enterprises, Inc. v. Air France*, the Fifth Circuit recognized that "the courts have established the proposition that one invested with general powers involving the exercise of independent judgment and discretion is such an agent." 664 F.2d 63, 64 (5th Cir. 1981). Per the court in the *Duncan* case, courts have "varied in strictness" in requiring compliance with Rule 4(h)(1)(B). *Duncan*, 2009 WL 10680059, at *2 (quoting *O'Meara v. NOLAC*, No. 90-4893, 1991 WL 110401, at *3 (E.D. La. 1991)). As analyzed by the *Duncan* court, in one line of cases, "[s]ervice is adequate so long as the person served is so situated

---

[59] La. Code Civ. Proc. art. 1261(B) provides that "[i]f the corporation has failed to designate an agent for service of process, if there is no registered agent by reason of death, resignation, or removal, or if the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent, service of the citation or other process may be made by any of the following methods: (1) By personal service on any officer, or director, or on any person named as such in the last report filed with the secretary of state. (2) By personal service on any employee of suitable age and discretion at any place where the business of the corporation is regularly conducted. (3) By service of process under the provisions of R.S. 13:3204, if the corporation is subject to the provisions of R.S. 13:3201." Because nothing in the record indicates that Courtesy does not have a designated agent for service of process, and no certification by a person attempting to make service that he was unable, after due diligence, to serve to designated agent has been filed, the Court finds that this provision is not applicable here.

[60] R. Doc. 7-1 at 5.

within the corporation that he or she will know what to do with the papers, and so long as the managing agent or agent for service actually receives the papers." *Id.* (quoting *O'Meara*, 1991 WL 110401, at *3). However, another line of cases "requires compliance with the letter of Rule 4[(h)(1)(B)]" and that "[a]bsent proof that the person served has been appointed to receive service, these courts look to whether or not that person was responsible for any substantial aspect of the corporation's operations, *i.e.*, was a managing or general agent. " *Id.* (quoting *O'Meara*, 1991 WL 110401, at *4).

Following this analysis, the court in *Duncan* held that service on "the sales manager for the Hammond Blockbuster location" "was clearly insufficient" under either standard as that party "is not a responsible party in charge of any substantial phase of Blockbuster, Incorporated's activity." *Id.* at *2 (quoting *Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 513 (3rd Cir. 1971) (internal quotations omitted)). The court continued that the sales manager did not have authority to bind Blockbuster, Inc., a named defendant, in a contract, hire or fire employees, or accept service of process on behalf of Blockbuster, Inc.; did not have executive responsibilities for Blockbuster, Inc.; and is not responsible for a substantial aspect of Blockbuster, Inc.'s operations. *Id.* The court also noted that there was no "evidence in the record that a person fitting the role of 'managing or general agent' actually received the summons and complaint." *Id.* Thus, the plaintiff in *Duncan* failed to carry his burden of showing that service was sufficient. *Id. See also Williams v. CVS*, No. 10-156, 2010 WL 11632868, at *2 (E.D. Tex. Sept. 15, 2010) (finding service on a CVS store manager "[did] not satisfy the requirements of service of process").

Here, the Court does not have enough information to determine whether Mr. Williams is a "managing or general agent" of Courtesy. In Plaintiff's Affidavit of Service, Mr. Williams is listed only as "Manager." No further information is provided, and his responsibilities and authority

are unknown.  Further, here, there also exists no evidence in the record showing that a person qualifying as a "managing or general agent," or the actual designated agent, has, in fact, received Plaintiff's Complaint and summons.  Because the Court cannot determine whether Plaintiff has properly served Courtesy under Rule 4(h), the Court finds that Plaintiff has failed to carry her burden of showing proper service was effected.

However, while proceeding *pro se* "does not exempt a party from compliance with relevant rules of procedural and substantive law," *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981) (citation omitted), the District Court has wide discretion in determining whether to dismiss an action for insufficient service, and courts often give *pro se* litigants leeway in correcting defects in service of process. *Lisson v. ING Groep N.V.,* 262 F.App'x. 567, 571 (5th Cir. 2007).   The Court, therefore, recommends that Plaintiff be granted 21 days to properly serve Courtesy.   However, because this Court also recommends dismissal of Plaintiff's Complaint, while granting Plaintiff an opportunity to file an amended complaint, Plaintiff should properly effect service of her amended complaint on Courtesy pursuant to Rule 4 within 21 days of the filing of said amended complaint, if such a filing is made.

### C.     Motion for More Definite Statement

Finally, as an alternative to their Motions to Dismiss, Defendants request a more definitive statement of the Complaint by Plaintiff pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.  However, in light of this Court's recommended granting of Defendants' Rule 12(b)(6) Motion to Dismiss, while allowing Plaintiff as opportunity to file an amended complaint, the Court finds that this request is moot and, therefore, recommends it be denied.

### IV.     Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendants' Rule 12(b)(6) Motion to Dismiss (R. Doc. 7) be **GRANTED**, and that the claims of Plaintiff against Defendants under the Federal Trade Commission Act and the Consumer Leasing Act be **DISMISSED WITH PREJUDICE** and the claims of Plaintiff against Defendants under the Truth in Lending Act be **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff be ordered to file an amended complaint **within 21 days** of the Court's ruling to the extent Plaintiff wishes to cure the deficiencies of her claim under the Truth in Lending Act outlined above. Should Plaintiff decline to file an amended complaint, her claims should be dismissed with prejudice and judgment entered in favor of Defendants.

**IT IS FURTHER RECOMMENDED** that Defendants' Rule 12(b)(5) Motion to Dismiss (R. Doc. 7), to the extent it challenges service of process of Defendant Todd Hebert, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendants' Rule 12(b)(5) Motion to Dismiss (R. Doc. 7), to the extent it challenges service of process of Defendant Courtesy Automotive Group, be **DENIED WITHOUT PREJUDICE**. If Plaintiff chooses to file an amended complaint within the 21 days allowed, she is ordered to ensure that service of her amended complaint is perfected on Defendant Courtesy Automotive Group pursuant to Rule 4 **within 21 days** of filing that amended complaint.

**IT IS FURTHER RECOMMENDED** that Defendants' Alternative Motion for More Definite Statement (R. Doc. 7) be **DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on March 8, 2021.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**